Filed 7/26/22 N.F. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| N.F.,<br><br>  Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>  Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>  Real Party in Interest. | F084376<br><br>(Super. Ct. No. 21CEJ300246)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review. Kimberly J. Nystrom-Geist, Judge.

N.F., in pro. per., for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Adriana Mendoza-Gurrola, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]  Before Levy, Acting P. J., Snauffer, J. and DeSantos, J.

N.F. (mother), in propria persona, seeks an extraordinary writ from the juvenile court's May 11, 2022, order issued at a contested jurisdictional/dispositional hearing adjudging her then 11-month-old daughter, A.F., a dependent child because of severe physical abuse A.F. sustained while in mother's care, denying mother reunification services and setting a Welfare and Institutions Code section 366.26 hearing[1] for August 23, 2022. Mother does not challenge the court's jurisdictional findings and dispositional orders. Instead, she contends the juvenile court abused its discretion in not continuing reunification services to the 18-month review hearing and asks for a stay in the proceedings until the matter is resolved on appeal. We dismiss mother's petition, concluding she failed to assert juvenile court error under California Rules of Court, rule 8.452[2] and deny her request for a stay.

## PROCEDURAL AND FACTUAL SUMMARY

One-month-old A.F. (the baby) presented to the emergency room on July 3, 2021, with bruising on her face, chest, mid-back, and arm. Further evaluation revealed multiple bilateral rib fractures of varying age, a left pulmonary contusion and left hemothorax. The fractures and laboratory test results were indicative of blunt force trauma and child abuse. The baby was admitted to the hospital where she remained for three days. Testing for a bone-related deficiency and/or a genetic disorder was normal.

Mother and her boyfriend, E.M., the baby's father, lived with the maternal grandparents, a maternal aunt and her two children and a maternal uncle.[3] Mother noticed bruising on the baby's chest on July 1, 2021, and showed them to the maternal grandmother. They thought the bruises were a birth mark or marks made when mother breastfed. On the early morning of July 3, mother noticed bruising by the baby's eye.

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] Rule references are to the California Rules of Court.

[3] Father also filed a writ petition in our case No. F084391.

She fed the baby and went back to sleep. When she woke up several hours later, she discussed the bruises with the grandmother and they decided she should take the baby to the hospital. Mother and E.M. (father) took the baby to the hospital. She was their first child.

Mother denied hurting the baby or observing anyone else hurt her. She and father were the primary caregivers, although she left the baby with the maternal grandmother for about two hours the week before while she and father went to the store. She had no concerns about father or her mother caring for the baby. Mother denied using drugs or alcohol during her pregnancy. She had a normal vaginal delivery and received prenatal care. She did not suffer from postpartum depression or anxiety. There was no domestic violence in her relationship with father, including hitting and yelling. Neither of them were working.

The Fresno County Department of Social Services (department) took the baby into protective custody and placed her in foster care upon her discharge from the hospital. She was subsequently placed with her paternal grandmother.

The department filed a dependency petition, alleging the baby came within the juvenile court's jurisdiction under section 300, subdivisions (a) (serious physical harm), (b)(1) (failure to protect), (e) (severe physical abuse), and (i) (cruelty) because she sustained serious injuries consistent with child abuse while in the care of her parents. As supporting facts, the department listed the baby's injuries: bruising on her chest, near her left eye, cheekbone and jawbone, multiple rib fractures of varying age, "left pulmonary contusion (bruise of the lung), hemothorax on the left (collection of blood in the space between the chest wall and the lung)," and "elevated troponin (protein found in the muscles of the heart)." Neither parent could explain how the injuries occurred.

The juvenile court ordered the baby detained, offered mother random drug testing, and ordered twice weekly supervised visitation. A hearing on jurisdiction and disposition was conducted as a contested hearing over several sessions in April and May 2022. The

department recommended the juvenile court sustain the petition and deny the parents reunification services under section 361.5, subdivision (b)(5) and (6).[4] Pending the hearing, mother completed a 12-week parenting class and a first aid class for children. She was evaluated for but did not need substance abuse or mental health treatment. She began drug testing in August 2021 and tested positive for creatinine in August through October 2021 and January 2022. She began individual counseling in August 2021 to deal with the abuse of the baby and loss of custody. In August 2021, she reported that father moved out of the home and they were no longer an intact couple. The parents regularly visited the baby and visits went well. Prior to their separation, they visited the baby together.

Dr. Sindhura Kodali, a child advocacy physician and pediatric hospitalist, testified she was consulted about the baby's injuries and was "absolutely certain" that her injuries were due to nonaccidental trauma. Rib fractures are painful because the nerve bundles run along the bottom of each rib. The baby would cry in pain upon injury. Rib fractures usually healed without treatment. The baby's injuries suggested forceful squeezing and potentially some blunt force trauma to the chest. The bruising on her chest, the hemothorax, the pulmonary contusions and the rib fractures could have happened at the same time.

---

**4**      Section 361.5, subdivision (b)(5) provides that family reunification services need not be provided when the juvenile court finds by clear and convincing evidence "[t]hat the child was brought within the jurisdiction of the court under [section 300, subdivision (e)] because of the conduct of that parent or guardian." Section 361.5, subdivision (b)(6)(A) allows for the denial of reunification services when the court adjudges the child a dependent under any subdivision of section 300 as a result of severe physical harm and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent.

Dr. Judith Casas, mother's therapist, testified she was working with mother as a potential abuser. She could not suggest any additional services that would help her improve her parenting. She believed mother had made progress in working on her depression and guilt for not recognizing signs that the baby had been hurt.

Father testified he had no idea how the baby sustained the injuries but believed someone in mother's family injured her, although he did not know who and he and mother were her primary caregivers. He considered telling the police that he injured the baby, thinking that the baby would be returned to them if he took the blame. However, mother's family advised him not to confess to something he did not do. He denied any violence in his relationship with mother but admitted yelling at her.

The maternal grandfather testified he never observed father with the baby but heard the baby cry when father changed her. He also heard father scolding the baby and told mother not to let him change her. However, mother allowed father to continue changing the baby.

Francisco M., mother's older brother, testified he and the parents slept in adjacent bedrooms. Whenever mother left the baby in the room with father, he heard the baby cry in "severe anguish." When that happened, he also heard the volume on the television increase and shuffling, mumbling or light singing. It seemed to him they were trying to muffle the sound of the baby crying. He never talked to mother about what he heard. It was a "huge red flag" when the father suggested he turn himself in. Francisco did not believe mother could have hurt the baby but believed father may have. No one else in the family could have harmed the baby because they were never alone with her.

Mother's brother, Jorge M., testified he did not perceive father's suggestion he turn himself in as anything more than his desire to provide the mother some emotional relief.

Mother testified she talked to the pediatrician about the discoloration on the baby's chest. The pediatrician told her some babies have discoloration and that it would go

away on its own. She first noticed the facial bruising on July 1. She woke father to tell him and he said, " 'What the F' " and went back to sleep. When she understood that the baby had been injured, she realized that father caused her injuries. She did not fully understand the baby's injuries until she heard Kondali's testimony. Mother also testified father was physically violent with her during her pregnancy and she was afraid of him. However, she never told her parents or doctors but told the social worker after they broke up. She did not believe father would hurt the baby and was not concerned about him taking care of her. In addition to completing a parenting class and participating in therapy, she completed a domestic violence class.

Father was recalled and denied mother's allegations of domestic violence.

Following testimony, the juvenile court struck the language " 'of varying age' " from the allegations in light of Kodali's testimony. The court adjudged the baby a dependent child under section 300, subdivisions (a), (b), (e), and (i) as alleged in the petition and denied the parents reunification services under section 361.5, subdivision (b)(5) and (6).

In ruling, the juvenile court found father was not credible, noting that he appeared "disconnected and distant." The court found mother credible in her emotional attachment to the baby but not credible in her testimony that she did not understand the baby's injuries until she heard Kodali testify. The court also found mother's testimony there was domestic violence in her relationship with father lacked credibility because had that been true, she had the opportunity to disclose that to the medical staff or social worker at the hospital when father was not present. The court stated, "It is, in fact, quite clear from all of the mother's statements that she had every reason to know that at least the father posed a risk [to] the child, as her own dad told her, and that she herself has seen and heard circumstances that were highly suspicious in that the child was crying while under the father's care following after a loud noise." The court also pointed out that, while Kodali testified the rib fractures could have occurred at the same time, she was not asked

6.

whether the bruises on the face and abdomen happened at the same time and the evidence pointed to multiple injuries inflicted days apart. Mother first saw bruising on the baby's face on July 1 and then saw more bruising a couple of days later.

**DISCUSSION**

Mother contends the juvenile court erred in terminating reunification services because the services provided, specifically the counseling services, were not reasonable. The court should have, she argues, continued reunification services another eight months to the 18-month review hearing. We conclude mother's contention is fundamentally flawed because reasonableness of services is not a cognizable issue from a jurisdictional/dispositional hearing. A brief overview of dependency proceedings will help explain why that is so.

*Dependency Overview*

The goal of dependency proceedings is to protect the child from harmful parental conduct while assisting the parent in resolving the underlying problem if possible. The juvenile court derives its jurisdiction to exercise care and control of a minor child under section 300 and its subdivisions. If the court finds, as it did here, that the child is described under any of the subdivisions of section 300, the court conducts a dispositional hearing to decide whether to remove the child from parental custody and order reunification services. The court must order services for the parent unless it finds that one of the circumstances listed in section 361.5, subdivision (b) applies. If the court finds that any of the circumstances listed apply, the court must deny the parent reunification services and set a section 366.26 hearing unless the court finds services would serve the child's best interest. If the court orders reunification services, it conducts periodic review hearings to decide whether the child can be safely returned to parental custody and whether to continue reunification efforts. In deciding whether to continue reunification efforts, the court considers whether the services provided to the parent were reasonable and whether the department made reasonable efforts to assist the parent in accessing and

7.

completing them. A finding the services provided were not reasonable can be a basis for continuing reunification services to the next review hearing.

A parent seeking review of the juvenile court's orders from the setting hearing must, as mother did here, file an extraordinary writ petition in this court. The purpose of such petitions is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's orders and findings issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4).)

Rule 8.452 requires the petitioner to articulate a claim of error and support it by citations to the record. (Rule 8.452(b).) Failure to do so renders the petition inadequate in its content and we are not required to independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

*Application*

The hearing conducted in April and May 2022 was a jurisdictional/dispositional hearing. The issues were whether there was sufficient evidence to support true findings that the baby was a child described under section 300, subdivisions (a), (b), (e), and (i) and whether there were grounds to deny mother reunification services under section 361.5, subdivision (b)(5) and (6). The juvenile court found sufficient evidence to exercise its dependency jurisdiction under all four subdivisions alleged and to deny mother reunification services under subdivisions (b)(5) and (6) of section 361.5. Mother does not challenge the court's jurisdictional findings and denial of services orders.

Instead, mother attempts to raise a reasonableness of services argument as if the hearing was a review hearing. However, it was *not* a review hearing. Therefore, the juvenile court did not make a reasonableness of services finding and mother does not challenge the findings and orders that the court did make. Consequently, she failed to comply with rule 8.452 by not asserting juvenile court error, which renders her writ petition inadequate for review.

**DISPOSITION**

The petition for extraordinary writ is dismissed.  This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).